UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. Commodity Futures Trading Commission., | ) ) | CASE NO. 3:14CV594 |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF OPINION** |
| | ) ) | **AND ORDER** |
| Bradley A. Miklovich., | ) ) | **(Resolves Docs. 49, 60, 69)** |
| Defendant. | ) | |

Pending before the Court are the parties' cross-motions for summary judgment. Docs. 49 and 60. Also pending before the Court is Defendant Bradley Miklovich's motions for sanctions. Doc. 69. Plaintiff U.S. Commodity Futures Trading Commission's ("the Commission") motion for summary judgment (Doc 49) is GRANTED. Miklovich's motion for summary judgment (Doc. 6) and motion for sanctions (Doc. 69) are DENIED.

**I. FACTS**

The Commission filed this suit under the Commodity Exchange Act ("CEA") on March 19, 2014. The complaint stems from a time period when Miklovich worked for Rice Investment Company. Miklovich began his employment with Rice, a small brokerage firm, in September of 2007. During the time period relevant to the complaint, Rice employed Larry Rice, Amanda Day, Kathlene Erhardt, Michele Rahimi, and Miklovich. Miklovich worked as an associated person ("AP") during his time at Rice.

The allegations in the complaint assert that from July 23 through July 30, 2013, Miklovich engaged in unauthorized trading in the accounts of two customers, the Decoster account and the Gottron account. The complaint further alleges that Miklovich falsified daily

reports or summaries in order to conceal his conduct. While Miklovich denies the allegations in his answer, there is no testimony from him in the record as he asserted his Fifth Amendment privilege throughout his deposition.

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id*. Likewise, the moving party's burden of production "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III.   ANALYSIS

In count one of the complaint, the Commission alleges that Miklovich violated 7 U.S.C. §§ 6b(a)(1)(A)-(C) which provides:

It shall be unlawful—

(1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person[;]

…

(A) to cheat or defraud or attempt to cheat or defraud the other person;

Case: 3:14-cv-00594-JRA  Doc #: 85  Filed:  09/30/15  4 of 11.  PageID #: 7656

> (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person

Count one further alleges that Miklovich violated 17 C.F.R. § 166.2 which provides:

> No futures commission merchant, retail foreign exchange dealer, introducing broker or any of their associated persons may directly or indirectly effect a transaction in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account:
>
> (a) With respect to a commodity interest as defined in any paragraph of the commodity interest definition in § 1.3(yy) of this chapter, specifically authorized the futures commission merchant, retail foreign exchange dealer, introducing broker or any of their associated persons to effect the transaction (a transaction is "specifically authorized" if the customer or person designated by the customer to control the account specifies—
>
> (1) The precise commodity interest to be purchased or sold; and
>
> (2) The exact amount of the commodity interest to be purchased or sold.

The Commission asserts that Miklovich violated these provisions when he engaged in trading without authorization and again when he falsified reports regarding his trades.

Similarly, Count Two of the complaint alleges that Miklovich violated 7 U.S.C. § 6c(b) which provides:

> No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe. Any such order, rule, or regulation may be made only after notice and opportunity for hearing, and the Commission may set different terms and conditions for different markets
> .

4

In turn, 17 C.F.R. § 33.10(a)-(c) provides:

>It shall be unlawful for any person directly or indirectly:
>
>(a) To cheat or defraud or attempt to cheat or defraud any other person;
>
>(b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;
>
>(c) To deceive or attempt to deceive any other person by any means whatsoever
>
>in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

Once again, the Commission claims that Miklovich's unauthorized trading and subsequent attempts to conceal it violate the above provisions.

"The knowing and deliberate execution of unauthorized trades, even if not done out of an evil motive or intent to injure the customer, is a fraud actionable under section 4b of the CEA." *Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279, 291 (S.D.N.Y. 1991)(citing *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987); *Haltmier v. Commodity Futures Trading Comm'n*, 554 F.2d 556, 560, 562 (2d Cir. 1977)). In the instant matter, there is no genuine issue of material fact surrounding whether Miklovich engaged in unauthorized trading. Both customers at issues, Decoster and Gottron, gave testimony that no trades could be effectuated on their behalf without specific authorization. Both further testified that the specific trades identified by the Commission had not been authorized. Furthermore, the Commission offered undisputed evidence that the trades were effectuated electronically using Miklovich's personal identifier. In response, Miklovich appears to assert that some portion of those trades was executed pursuant to open positions. In support, Miklovich's counsel offers an opinion as to the meaning of certain documents. This interpretation, however, is unsupported by any evidence in the record. The

5

sole evidence in the record demonstrates that Miklovich engaged in the trades at issue, 23 in total, without authorization.

The parties, however, vehemently dispute whether Miklovich prepared false documents in an effort to conceal his unauthorized trades. Miklovich contends that cell phone records demonstrate that he was not at work when several reports were created and that fax records demonstrate that on other days no reports were sent. The parties' arguments on this issue are largely in the weeds, to say the least. The parties and their counsel lob accusations at one another of being disingenuous and unethical. In the end, there is no dispute that Miklovich did not inform anyone of the trades he made, despite knowing that his failure to do so would result in the daily summaries being inaccurate. Accordingly, regardless of whether Miklovich himself deliberately created a false document, he knowingly omitted information that caused false reports to be generated. As a result, his violations have still been established.

Similarly, the parties dedicate pages of briefing to whether this Court should draw an adverse inference from Miklovich's invocation of his Fifth Amendment rights. As detailed above, the Court need not reach this issue. Even without such an inference, the Commission has carried its burden to demonstrate Miklovich's fraud. Moreover, were there any question remaining regarding Miklovich's scienter, the Court offers the following commentary. First, the fact that the unauthorized trading occurred during a week when the employee responsible for creating the daily summaries was on vacation is circumstantial evidence of Miklovich's knowledge and intent. Second, Miklovich's text messages on July 30 to Rahimi claiming that his laptop and iPad had been stolen from his car only further support a theory that he was concocting a story to cover up his unauthorized trading. All of those facts support only one conclusion -- Miklovich "acted deliberately, knowing that his acts were unauthorized and

contrary to instructions." *Haltmier v. Commodity Futures Trading Comm'n*, 554 F.2d 556, 562 (2d Cir. 1977). "Such knowing, intentional conduct made his acts willful, and therefore his violations of the statutory prohibition against cheating or defrauding the customer were willful, in the accepted sense for infractions of this type." *Id.*

Based upon the above, the Commission's motion for summary judgment is well taken and Miklovich's cross-motion for summary judgment lacks merit.

**Motion for Sanctions**

Miklovich seeks sanctions and contends that the Commission plead and sought to establish facts that it knew were false. Specifically, Miklovich contends that the Commission knew that he was working from home on certain days and could not have faxed any statements out to Decoster on those days. Miklovich asserts that despite the facts, the Commission still pled and sought to prove its allegations. Miklovich further contends that the Commission failed to properly preserve evidence.

There are numerous flaws in Miklovich's motion for sanctions. First, the timing of the motion, filed more than a month after both parties filed cross-motions for summary judgment, is suspect. According to the arguments raised by Miklovich, he was aware of these alleged false allegations from the onset of the matter. He was further aware of the alleged improper requests for admission and deposition question months and months prior to motion practice herein. However, he made no effort to seek Court intervention to either remedy the alleged abuses or set this litigation on its alleged correct path.

On its merits, the motion for sanctions is largely moot. Miklovich seeks an order barring the Commission from obtaining an adverse inference related to him invoking the Fifth Amendment. As the Court has found no need to draw such an inference, the requested relief is

largely moot.  Additionally, the Court finds no basis for the imposition of sanctions for the alleged failure of Rice to preserve a singular email.  As the Commission has highlighted, it had no legal obligation to issue a litigation hold to Rice, a third party to this lawsuit.  As such, no sanctions can flow from any alleged failure by Rice to preserve documents.  The motion for sanctions is DENIED.

**V.     CONCLUSION**

The Commission's motion for summary judgment is GRANTED.  In granting the motion, this Court must also determine what relief should be afforded the Commission.  Upon review, the Court finds that the Commission has amply demonstrated that Miklovich's actions were the proximate cause of loss to Rice in the amount of $566,360.06.  Accordingly, Miklovich is ordered to pay restitution to Rice Investment Company in the amount of $566,360.06.  Moreover, the Commission has also demonstrated that its request for injunctive relief is warranted.  Given the 23 unauthorized trades and Miklovich's attempts to conceal his conduct, it is likely that he will engage in similar conduct in the future.  Accordingly, Miklovich is permanently restrained, enjoined, and prohibited from directly or indirectly:

A. Cheating or defrauding, or attempting to cheat or defraud, other persons; willfully making, or causing to be made, any false report or statement to other persons, or willfully entering, or causing to be entered, any false record for other persons; or willfully deceiving, or attempting to deceive, other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of such other persons, in violation of Section 4b{a)(l)(A)-(C) of the Act, 7 U.S.C.§ 6b(a)(l)(A)-(C) (2012);

B. Effecting a transaction in a customer's commodity interest account, without the customer's specific authorization or without the customer's written authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2 (2014);

C. Cheating or defrauding or attempting to cheat or defraud other persons; deceiving or attempting to deceive other persons; willfully making or causing to be made to other persons any false report or statement; or willfully causing to be entered for other persons any false record, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012) and Regulation 33.10(a)-(c), 17 C.F.R. § 33.10(a)-(c) (2014).

D. Using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making, or attempting to make, any untrue or misleading statement of a material fact or omitting to state a material fact necessary in order to make the statements made not untrue or misleading; or engaging, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit on other person, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, in violation of Section 6(c)(l) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.l(a) (2014).

Miklovich is also permanently restrained, enjoined, and prohibited from directly and indirectly:

a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012);

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);and/or

g. acting as a principal (as that term is defined in Regulation 3. l(a), 17 C.F.R. § 3.l(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.l4(a)(9), 17 C.F.R. § 4.l4 (a)(9) (2014).

Finally, the Court must determine whether a civil monetary penalty is also warranted in this matter. The Court acknowledges that were it to find every violation alleged by the Commission, the maximum statutory penalty would exceed $4 million. The Commission meanwhile seeks a penalty of $840,000. Upon review, the Court finds such a penalty to be far in excess of that allowed in similar matters. *See Monieson v. CFTC*, 996 F.2d 852 (7th Cir. 2993) (reviewing various awards). In *Monieson*, that court mentions the award made in *In the Matter of Incomco, Inc.*, [1990-1992 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 25,198 at 38,537 (CFTC Dec. 30, 1991). In *Incomco*, a penalty of $105,000 was imposed for conduct that resulted in the conversion of $550,000 of customer funds and the deliberate avoidance of reporting

10

requirements. Given that the conduct herein resulted in a similar loss to customers and evidenced a deliberate attempt to conceal the activity, the Court finds that a similar penalty is warranted. Accordingly, a civil penalty of $100,000 is hereby imposed on Miklovich for his conduct.

The Commission's motion for summary judgment is GRANTED. The relief discussed above is hereby ordered. Miklovich's cross-motion for summary judgment and his motion for sanctions are hereby DENIED.

IT IS SO ORDERED.


DATE: September 30, 2015         */s/ John R. Adams*_____
                                 Judge John R. Adams
                                 UNITED STATES DISTRICT COURT